NES Rentals vs. Maine Drilling & Blasting, Inc., & another.[1]

Berkshire. March 7, 2013. - July 15, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Mechanic's Lien. Bond. Practice, Civil,* Amendment of complaint, Motion to dismiss, Enforcement of liability on bond, Commencement of action.

This court concluded that the ordinary relation back provisions of Mass. R. Civ. P. 15 (c) apply to G. L. c. 254, § 14, actions to enforce mechanic's lien dissolution bonds, and that a claimant may, in accordance with rule 15, amend a timely filed complaint seeking enforcement of a mechanic's lien to add a claim to enforce a lien dissolution bond against the holder of the bond after the ninety-day period set forth in the statute; accordingly, a subcontractor's amendment of its original complaint to enforce a mechanic's lien constituted timely commencement of its action to enforce a mechanic's lien dissolution bond pursuant to the statute. [860-870] Lenk, J., dissenting.

Civil action commenced in the Superior Court Department on May 21, 2010.

A motion to dismiss was heard by *Daniel A. Ford*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Andrew R. Grainger*, J., in the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John J. Ferriter* for Maine Drilling & Blasting, Inc.

*Peter F. Davis* for the plaintiff.

Duffly, J. We address in this appeal whether a subcontractor's amendment of its original complaint to enforce a mechanic's lien constituted timely commencement of its action to enforce a bond pursuant to G. L. c. 254, § 14, as amended through St. 2002, c. 400, § 2 (§ 14), which sets forth procedures for execution and enforcement of bonds to dissolve mechanic's liens. The plaintiff, NES Rentals, Inc. (NES Rentals), filed an action

---

[1]Berkley Regional Insurance Company.

in the Superior Court to enforce a mechanic's lien recorded pursuant to G. L. c. 254, § 4, as amended through St. 1996, c. 364, § 5 (§ 4), on land owned by Berkshire Wind and Power Cooperative Corporation (Berkshire Wind). More than a year later, Maine Drilling and Blasting, Inc. (Maine Drilling), acting as principal debtor, and the surety, Berkley Regional Insurance Company (Berkley), executed and recorded a surety bond to dissolve the lien pursuant to § 14. The bond named NES Rentals as an obligee. Within ninety days of receiving notice of the bond, NES Rentals served on Maine Drilling and Berkley a motion to amend its original complaint, seeking to include them as defendants in its underlying complaint and to add a claim to enforce the bond against them.[2]

After NES Rentals filed the amended complaint with leave of court, a judge in the Superior Court denied Maine Drilling's motion to dismiss the amended complaint, explaining that although NES Rentals had not filed the amended complaint within ninety days of receipt of notice of the bond, service of the motion on the defendants within that ninety-day period provided the defendants with actual notice of the action to enforce the bond, and satisfied the § 14 requirement that a claimant have "commenced" a civil action within that period in order to enforce the bond. The defendants sought leave to appeal, which was allowed, and we transferred the case to this court on our own motion.

We affirm the order denying the defendant's motion to dismiss, but for reasons different from those relied on by the judge. We conclude that the term "commenced" as used in § 14 contemplates the filing of an action in court in accordance with Mass. R. Civ. P. 3, as amended, 385 Mass. 1215 (1982), and that the commencement requirement in § 14 is satisfied on the facts of this case because the amendment to the complaint relates back to the date on which NES Rentals filed its original action against Berkshire Wind under Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974) (rule 15 [c]).

1. *Background and prior proceedings.* NES Rentals alleges that McManus Excavating, Inc., contracted with it to rent equipment for construction use on property owned by Berkshire Wind.

---

[2]A judge allowed a motion of Berkshire Wind Power Cooperative Corporation (Berkshire Wind) to dismiss.

On April 26, 2010, NES Rentals perfected a mechanic's lien on the Berkshire Wind property by recording a notice of its contract with McManus, as required by § 4,[3] and a sworn statement of account that claimed $89,101 as the amount due for the rental equipment, as required by G. L. c. 254, § 8, as amended by St. 1996, c. 364, § 9 (§ 8).[4] On May 25, 2010, NES Rentals filed and recorded its complaint against Berkshire Wind in the Superior Court, seeking to enforce the lien. See G. L. c. 254, § 5, as amended by St. 1996, c. 364, § 9 (§ 5) (setting forth procedures for enforcement of mechanic's lien by civil action).

On April 29, 2011, Maine Drilling[5] and Berkley recorded a bond in the penal sum of $89,101, thereby dissolving the lien pursuant to § 14.[6] NES Rentals received notice of recording

---

[3]General Laws c. 254, § 4, as amended through St. 1996, c. 364, § 5 (§ 4), provides, in relevant part:

> "Whoever . . . furnishes rental equipment, appliances or tools, under a written contract with a contractor, or with a subcontractor of such contractor, may file or record in the registry of deeds for the county or district where such land lies a notice of his contract . . . . Upon filing or recording a notice, as hereinbefore provided, and giving actual notice to the owner of such filing, the subcontractor shall have a lien upon such real property, land, building, structure or improvement owned by the party who entered into the original contract as appears of record at the time of such filing, to secure the payment of all labor and material and rental equipment, appliances or tools which he is to furnish or has furnished for the building or structure or other improvements. . . ."

[4]General Laws c. 254, § 8, as amended by St. 1996, c. 364, § 9, provides:

> "Liens under section[] . . . four shall be dissolved unless the contractor, subcontractor, or some person claiming by, through, or under them, shall[, within a specified time frame,] file or record in the registry of deeds in the county or district where the land lies a statement, giving a just and true account of the amount due or to become due him . . . ."

[5]Maine Drilling states that it is another subcontractor on the Berkshire Wind property. The record is silent on the point, but Maine Drilling's role as a subcontractor is not material to our decision in this case.

[6]General Laws c. 254, § 14, as amended through St. 2002, c. 400, § 2 (§ 14), provides, in relevant part:

> "Any person in interest may dissolve a lien under this chapter by recording . . . a bond . . . in a penal sum equal to the amount of the lien sought to be dissolved conditioned for the payment of any sum which the claimant may recover on his claim for labor or labor and

of the bond on June 13, 2011, and on August 23, 2011, NES Rentals served on Maine Drilling and Berkley a motion for leave to amend its complaint against Berkshire Wind by adding them as defendants, and asserting against Maine Drilling and Berkley a new claim to enforce the bond. On October 3, 2011, NES Rentals filed its motion to amend with the Superior Court, and Berkshire Wind filed a cross motion to dismiss the lien enforcement action.

On November 2, 2011, a judge of the Superior Court allowed both the motion of NES Rentals to amend the complaint and Berkshire Wind's cross motion to dismiss the underlying complaint against it; NES Rentals then filed its amended complaint with the court. Thereafter, Maine Drilling filed a motion to dismiss the amended complaint on the ground that it was not timely filed in accordance with the terms of § 14, because the amended complaint, which constituted the action to enforce the bond, was not filed within ninety days after NES Rentals received notice of recording of the bond, that is, by September 11, 2011.

The judge denied Maine Drilling's motion to dismiss the amended complaint. He explained that "even though the amended complaint was actually not 'filed' within the 90 day period, the defendants had actual notice of it well within that period," where NES Rentals had served the motion to amend on Maine Drilling and Berkley within that time, and that, therefore, "the purpose of the statute, i.e., notice to the issuer of the bond within 90 days, was satisfied."[7] Maine Drilling filed an application for leave to prosecute an interlocutory appeal with a single justice of the Appeals Court. That motion was allowed, and we subsequently transferred the case to this court on our own motion.

---

materials. . . . The claimant may enforce the bond by a civil action commenced within ninety days after the later of the filing of [the G. L. c. 254, § 8, statement of account] . . . or receipt of notice of recording of the bond. . . ."

[7]As an additional ground for denying the motion on the basis of notice, the judge stated that Maine Drilling and Berkley were represented by the same counsel as Berkshire Wind, the defendant in the original action. Maine Drilling and Berkley assert that this was a factually incorrect assumption based solely on the fact that counsel in the two firms share a surname. Nothing in the record supports the statement that the firms, or the attorneys, are "the same." Our disposition of the matter, however, does not depend on a resolution of this issue.

2. *Discussion.* In reviewing the denial of a motion to dismiss, we consider the matter de novo, *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011), accepting as true "the factual allegations in the plaintiff['s] complaint, as well as any favorable inferences reasonably drawn from them." *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998), citing *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), abrogated on other grounds, *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635 (2008).

In this case we consider whether amendment of a complaint, originally brought as an action to enforce a lien, by adding a claim to enforce a lien dissolution bond constitutes timely commencement of an action to enforce the bond within the meaning of § 14. We begin our discussion of the applicable provisions of G. L. c. 254 (mechanic's lien statute) with the observation that it is the primary purpose of the mechanic's lien statute "to provide security to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner's real estate" through perfection of a mechanic's lien on the owner's real estate. *Hammill-McCormick Assocs., Inc.* v. *New England Tel. & Tel. Co.*, 399 Mass. 541, 542-543 (1987), citing *Mitchell* v. *Packard*, 168 Mass. 467, 469 (1897).

"At the same time, the statute contains filing and notice requirements to protect the owner and others with an interest in the property." *Id.* at 543, and cases cited. The mechanic's lien statute is "designed to ensure that a person searching the land records in a registry of deeds can determine with certainty whether or not title to a particular parcel of land is encumbered by a mechanic's lien." *National Lumber Co.* v. *LeFrancois Constr. Corp.*, 430 Mass. 663, 668 (2000) (*National Lumber I*), citing *Pratt & Forrest Co.* v. *Strand Realty Co.*, 233 Mass. 314, 317-318 (1919). Additionally, because a perfected lien is an encumbrance on the owner's property, the statute provides for prevention of future liens and dissolution of existing liens by the giving of a bond, see G. L. c. 254, § 12, as amended through St. 2002, c. 400, § 1 (§ 12), and § 14, which benefits "an owner of land (or anyone possessing an interest in that land) by furnishing means to keep his title free from liens" and preventing the sale of the land to satisfy a lien.[8] *Warren Bros. Co.* v.

---

[8]NES Rentals made no claim in the Superior Court that Maine Drilling is

*Peerless Ins. Co.*, 8 Mass. App. Ct. 719, 722 (1979), citing *Rockwell* v. *Kelly*, 190 Mass. 439, 440 (1906). Thus, the mechanic's lien statute both "governs the creation, perfection, and dissolution of a mechanic's lien," *National Lumber Co.* v. *United Cas. & Sur. Ins. Co.*, 440 Mass. 723, 726 (2004) (*National Lumber II*), citing *Ng Bros. Constr.* v. *Cranney*, 436 Mass. 638, 644 (2002), and sets forth the procedures for execution and enforcement of a lien dissolution bond. *National Lumber II*, *supra* at 726.

We look to the specific provisions governing creation and perfection of a mechanic's lien, and the procedures for enforcement of a lien dissolution bond, to decide whether NES Rentals has fulfilled the requirements for enforcement of the bond by timely commencing a civil action. Under § 4 of the mechanic's lien statute, a subcontractor furnishing rental equipment for use on land may record a lien on that property, but under G. L. c. 254, § 11, as amended through St. 1996, c. 364, § 11 (§ 11), "[t]he lien shall be dissolved unless a civil action to enforce it is commenced within ninety days after the filing of the statement required by section eight," and thereafter "filed in the registry of deeds and recorded." G. L. c. 254, § 5 (delineating procedures for lien enforcement action). There is no question that NES Rentals recorded its lien and timely commenced and recorded a civil action to enforce it in the Superior Court, after recording a § 8 statement setting forth the amount due for the rental equipment it had furnished.

Section 14 dictates how such a perfected lien may be dissolved by the posting of a bond, and what a subcontractor must do to maintain his security. "Any person in interest may dissolve a lien . . . by recording . . . a bond . . . in a penal sum

not a "person in interest" capable of posting a bond under § 14, as that term is defined by G .L. c. 254, § 5, as amended through St. 1996, c. 364, §§ 6, 7 (§ 5) ("The terms 'party in interest' and 'person in interest,' as used in this chapter, shall include mortgage[e]s and attaching creditors"). The argument, raised by NES Rentals for the first time on appeal, has been waived. See *National Lumber Co.* v. *United Cas. & Sur. Ins. Co.*, 440 Mass. 723, 729 n.10 (2004) (*National Lumber II*), citing Mass. R. A. P. 16 (a), as amended, 367 Mass. 921 (1975). We assume without deciding that Maine Drilling is a proper bondholder under § 14.

equal to the amount of the lien sought to be dissolved," and a claimant, such as NES Rentals, "may enforce the bond by a civil action commenced within ninety days after the later of the filing of the statement required by section 8 or receipt of notice of recording of the bond . . . ." G. L. c. 254, § 14. The question before us, then, is whether, under this framework, NES Rentals has "commenced" a civil action by amending its original complaint, and whether the date of commencement, for purposes of § 14, is the date on which the amended complaint was filed, or whether it relates back to the date of the original complaint.

"Because a mechanic's lien is purely a creation of statute, we have consistently required exact compliance with the statute in order to create, perfect, and enforce such a lien." *Golden* v. *General Bldrs. Supply*, 441 Mass. 652, 654 (2004) (*Golden*), and cases cited. See *National Lumber II, supra* at 729, citing *National Lumber I*, 430 Mass. at 666 (just as strict compliance with provisions of statute is required to perfect lien, person in interest may dissolve lien by strictly adhering to statute); *Ng Bros. Constr.* v. *Cranney, supra* at 644, citing *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 752 (1989) ("The [mechanic's lien] statute is strictly construed against the party claiming the lien"). Relying on these rules of strict compliance, Maine Drilling argues that mere service of an unfiled motion to amend a complaint within ninety days of receipt of notice of a lien dissolution bond does not constitute "commence[ment]" of a civil action to enforce the bond under § 14.

According to Maine Drilling, NES Rentals did not "commence[]" an action on the bond within ninety days from the date on which it received notice of the recording of the bond, because NES Rentals did not file its amended complaint until November 2, 2011, or even file its motion to amend until October 3, 2011, well beyond ninety days after NES Rentals was served with notice of the bond on June 13, 2011.[9]

The mechanic's lien statute does not define the phrase "civil action commenced," but its meaning may be discerned from the legislative history of the statute. See *Commonwealth* v. *Hamil-*

---

[9]Maine Drilling does not argue that an amended complaint to enforce a bond could not, if filed in the Superior Court by September 11, 2011, have qualified as a timely filed "civil action" within the meaning of § 14.

*ton*, 459 Mass. 422, 433 (2011), citing *81 Spooner Rd. LLC* v. *Brookline*, 452 Mass. 109, 115 (2008) (where statute unclear, appropriate to look to statute's prior versions, development, and progression through Legislature). The phrase "civil action commenced," replacing the phrase "petition in equity filed," was added by legislation dated November 30, 1973, entitled "An Act improving the procedure in civil trials and appeals." St. 1973, c. 1114, § 320. This act derived from 1973 House Doc. No. 7236, a bill intended "to conform the General Laws of Massachusetts to the Massachusetts rules of civil procedure and the Massachusetts rules of appellate procedure."

We adopted the Massachusetts rules of civil procedure earlier that year, see *National Lumber I*, 430 Mass. at 670-671; Introduction to Mass. R. Civ. & Mass. R. App. P., 365 Mass. 730 (1974), and we assume that the Legislature was aware of the recently adopted rules when it amended § 14 in 1973. See *Rhodes* v. *AIG Domestic Claims, Inc.*, 461 Mass. 486, 501 (2012), quoting *CFM Buckley/North LLC* v. *Assessors of Greenfield*, 453 Mass. 404, 412 (2009) ("it . . . must be presumed that the Legislature knew preexisting law and the decisions of this court"). It is apparent from this history that the Legislature intended the meaning of "civil action commenced" as used in § 14 of the mechanic's lien statute to be interpreted consistently with the meaning of those terms in the Massachusetts rules of civil procedure.

As provided by Rule 3 of the Massachusetts Rules of Civil Procedure, "A civil action is commenced by (1) mailing to the clerk of the proper court . . . a complaint and an entry fee . . . or (2) filing such complaint and an entry fee with such clerk." Mass. R. Civ. P. 3, as amended, 385 Mass. 1215 (1982).[10] See Zobel, The Massachusetts Rules of Civil and Appellate Procedure, 59 Mass. L.Q. 115, 115 (1974) ("A civil action is commenced under the new Rules in a very simple manner. A document called a complaint is prepared, which is analogous to the present day declaration or bill in equity . . . . When the complaint is completed, it may be either filed directly in court or . . . mailed . . . to the clerk of court"). We therefore agree

---

[10]The relevant language of rule 3 has not changed since its original adoption. Compare Mass. R. Civ. P. 3, as amended, 385 Mass. 1215 (1982), with Mass. R. Civ. P. 3, 365 Mass. 733 (1974).

with Maine Drilling that service of a motion to amend the complaint, although providing notice that an amended complaint may be filed upon approval of the court, see Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), does not constitute commencement of an action within the meaning of § 14.

However, this conclusion does not end our inquiry. When Maine Drilling and Berkley recorded the lien dissolution bond and provided notice of the bond to NES Rentals, NES Rentals had already commenced a civil action to enforce its lien against Berkshire Wind, in accordance with the provisions of §§ 5 and 11.[11] To determine whether NES Rentals has timely commenced an action within the meaning of § 14, therefore, we must consider whether its amended complaint (seeking enforcement of the bond) relates back to the original complaint (seeking enforcement of the lien) under Mass. R. Civ. P. 15 (c), such that it may enjoy the benefit of the original complaint's filing date, even though the amended complaint was filed outside the time frames set forth in the mechanic's lien statute.[12]

Our adherence to principles of strict statutory construction applicable to the mechanic's lien statute, "and our insistence on precise compliance with those statutory terms, do[] not mean that the rules of civil procedure are inapplicable to proceedings concerning mechanic's liens . . . . Absent some incompatibility between a specific procedural rule and the provisions of the [mechanic's lien] statute, we will apply and enforce both." *Golden,* *supra* at 655, citing *National Lumber I, supra* at 670-672.

Under ordinary application of the Massachusetts rules of civil

---

[11]We are not concerned here with a situation in which a bond preceded and thus precluded attachment of a lien, governed by G. L. c. 254, § 12, as amended through St. 2002, c. 400, § 1 (§ 12), or where, at the time that the bond was recorded, a lien claimant already had perfected a lien but had not yet commenced an action to enforce it. In accordance with §§ 12 and 14, both of those situations require a claimant to commence a new action to enforce the bond.

[12]An amended complaint is a pleading that qualifies as a civil action within the meaning of § 14. See Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974) ("a party may amend his pleading only by leave of court or by written consent of the adverse party"). Cf. *Golden* v. *General Bldrs. Supply,* 441 Mass. 652, 655 (2004) (*Golden*) (counterclaim to enforce lien may be "civil action" under § 5 and G. L. c. 254, § 11, as amended through St. 1996, c. 364, § 11 [§ 11], because Mass. R. Civ. P. 13 [b], 365 Mass. 758 [1974], permits party to "state as a counterclaim *any claim* against an opposing party" [emphasis in original]).

procedure, the time of filing of an amended complaint relates back to the date the original complaint was filed. See Mass. R. Civ. P. 15 (c) ("Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment [including an amendment changing a party] relates back to the original pleading").[13] "Massachusetts practice is more liberal than other jurisdictions in allowing amendments adding or substituting defendants after expiration of a period of limitations." *National Lumber I, supra* at 671, citing Reporters' Notes to Mass. R. Civ. P. 15, Mass. Ann. Laws, Rules of Civil Procedure at 426 (Lexis 1999). "In Massachusetts, 'where an action has been commenced before the statute of limitations has run, a plaintiff may be allowed to substitute one defendant for another after the statute of limitations has run against the proposed substitute defendant.' " *Id.* at 671-672, quoting *Wadsworth* v. *Boston Gas Co.*, 352 Mass. 86, 89 (1967).

The language of rule 15 (c) has remained unchanged since the enactment of the Massachusetts rules of civil procedure in 1973, which prompted the amendment of the mechanic's lien statute to conform to the newly adopted rules. See Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974); 1973 House Doc. No. 7236. Although we assume that the Legislature was aware of the relation back provisions of rule 15 (c) and knew those provisions generally would apply when it added the language "a civil action commenced" to § 14, see *Rhodes* v. *AIG Domestic Claims, Inc., supra* at 501, citing *CFM Buckley/North LLC* v. *Assessors of Greenfield, supra*, we will not apply the ordinary relation back provisions of rule 15 (c) in circumstances where application of the rule conflicts with the terms or purpose of the

[13]The amendment of a complaint to enforce a lien, by adding a claim seeking enforcement of a lien dissolution bond against a person who executed the bond, complies with the threshold requirement of Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974), that the added claim or claims arise "out of the same conduct, transaction, or occurrence set forth in . . . the original pleading." A lien dissolution bond is inextricably connected to the underlying lien. It is based on and has the effect of dissolving the lien, and it may be enforced only to the extent that the claimant would have been able to recover on the claim for labor or labor and materials that served as the basis of the lien. G. L. c. 254, § 14.

mechanic's lien statute. As we said in *Golden, supra* at 660-661, and cases cited, "Where . . . application of the otherwise customary rules of relation back would compromise one of the objectives of a statutory scheme, relation back is not allowed." We conclude that the objectives of the statutory scheme would not be undermined by permitting ordinary operation of the relation back rule to render NES Rental's amended complaint timely filed against Maine Drilling and Berkley.

In *National Lumber I, supra* at 671-672, we held that a plaintiff who had timely commenced an action to enforce a § 4 lien against a former property owner could amend the complaint to add the present property owner, even after the statutory period for bringing an enforcement action under § 11 had expired. As we explained in that case, under rule 15 (c), the action relates back to the date of the commencement of the complaint, and § 11 does not bar application of rule 15 (c) because § 11 is not a statute of repose blocking later claims against successive property owners. *Id.*

By comparison, in *Golden, supra,* we held that a counterclaim to enforce a lien, filed after the § 11 deadline to commence an action on that lien, does not relate back to the date of the complaint filed by the property owner, *id.* at 661, because "allowing for reinstatement of a dissolved lien by later filing of a counterclaim 'would effectively give the contractor a period greater than that intended by the Legislature' in which to enforce the lien." *Id.* at 659, quoting *Tremont Tower Condominium, LLC* v. *George B.H. Macomber Co.,* 436 Mass. 677, 684 (2002). As we noted in *Golden, supra* at 659-660, quoting *National Lumber I, supra* at 669, relation back in such a case would "wreak havoc with one of the statute's important purposes, namely, the provision of 'an accurate system for recording and identifying encumbrances secured under the mechanic's lien statute,' " because a title examiner who found no complaint recorded on a lien within 120 days[14] of recording of the § 8 statement would not be able to rely on the absence of a recorded

---

[14] Because a lienholder has ninety days to file a complaint under § 11, and thirty days to record the complaint thereafter under § 5, the lienholder has a maximum of 120 days within which to commence and provide record notice of a claim to enforce a lien.

complaint at that point in time to establish that the lien had been dissolved and no longer encumbered the property.

The text and purpose of § 14 and the mechanic's lien statute support ordinary application of the relation back provisions of rule 15 (c) to the circumstances of this case. Section 14 states in general terms that "[t]he claimant may enforce the bond by a civil action commenced within ninety days after the later of the filing of the statement required by [§] 8 or receipt of notice of recording of the bond." First, as discussed above, the phrase "civil action commenced," read in light of the circumstances of its addition to the statute, permits relation back of an amended complaint to the date of a timely filed original complaint. Moreover, the language "commenced within ninety days after" does not bar commencement of an action before the ninety-day period, as would result from application of the relation back rules in this case. See *Mullen Lumber Co.* v. *Lore*, 404 Mass. 750, 754-756 (1989) (under § 11, which provides that lien dissolves unless civil enforcement action is "commenced within [ninety] days after" filing of § 8 statement, ninety-day period establishes "latest time at which a lien could be enforced and does not preclude . . . enforcement" prior to filing of § 8 statement).[15]

Additionally, nothing in the language of § 14 requires that

___

[15]This interpretation is consistent with the legislative history of § 14. The 2002 amendments to § 14 added "the later of the filing of the statement required by section 8 or" to the statute, see St. 2002, c. 400, § 2, which previously had required only that a civil action be commenced "after the receipt of notice of recording of the bond." Compare G. L. c. 254, § 14, as amended through St. 1996, c. 364, § 14, with G. L. c. 254, § 14, set forth in note 6, *supra*. A December, 2002, memorandum to then Governor Jane M. Swift from the Director of Legislative Research regarding 2002 Senate Doc. No. 931, the bill that was enacted as St. 2002, c. 400, §§ 1-2, explained that, under this bill, "the final deadline for either type of bond [under § 12 or § 14] will be [ninety] days after the claimant files a 'Statement of Claim,' in accordance with c. 254, § 8 . . . . . The effect of the change is to afford contractors who rely on bonds the same amount of time to commence an action on that claim as contractors who rely on liens currently have to file an action to enforce the lien." See also R.V. Lizza, Massachusetts Mechanic's Lien Law § 5.5, at 5.5.1 (Mass. Cont. Legal Educ. 2006) ("The 2002 Amendment also addressed a procedural 'trap for the unwary' " under which claimants bringing actions to enforce bonds under §§ 12 and 14 may have "a shorter period of time than would be available for making a normal lien claim"). It thus appears that, in adding more detail to the § 14 timeline, the Legislature was concerned with

the action to enforce the bond be filed as a new, separate action, rather than as an amendment to an existing action to enforce the lien. Indeed, the statute emphasizes the interconnectedness of the two claims: the bond must itself be "conditioned for the payment of any sum which the claimant may recover on his claim for labor or labor and materials" and the bond "shall not create any rights which the claimant would not have had, or impair any defense which the obligors would have had, in an action to enforce a lien." G. L. c. 254, § 14. Furthermore, § 5, which provides detailed procedural requirements for commencement of an action to enforce a lien, by its terms contemplates amendment of lien enforcement actions, as it includes a provision for adding any "parties in interest,"[16] a term that is broad enough to include a "person in interest" who records a § 14 bond.[17] G. L. c. 254, § 5.

Moreover, application of the relation back provisions of rule 15 (c) in this context is consistent with, rather than repugnant to, the objectives of the mechanic's lien statute.[18] As we have noted, "[a] primary purpose of G. L. c. 254 is 'to provide security

ensuring that claimants were not disadvantaged by shorter deadlines to enforce a bond than claimants would have had if no bond had been executed. This history evidences the Legislature's intent to expand periods for bond enforcement and does not suggest that the statute was intended to preclude earlier enforcement.

[16]General Laws c. 254, § 5, provides, in pertinent part: "All other parties in interest may appear and have their rights determined in such action, and at any time before entry of final judgment, upon the suggestion of any party in interest that any other person is or may be interested in the action, or of its own motion, the court may summon such person to appear in such cause on or before a day certain or be forever barred from any rights thereunder. The court may in its discretion provide for notice to absent parties in interest."

[17]Compare § 5 ("The terms *'party in interest'* and *'person in interest,'* as used in this chapter, shall include mortgage[e]s and attaching creditors" [emphasis added]), with § 12 ("The bond may be enforced by a civil action in the superior court or district court brought by any *party in interest*" [emphasis added]), and § 14 ("Any *person in interest* may dissolve a lien under this chapter by recording . . . a bond" [emphasis added]).

[18]Cf. *Nett* v. *Bellucci,* 437 Mass. 630, 635-636 (2002) (relation back rule of Mass. R. Civ. P. 15 [c] inapplicable where literal application would be contrary to purposes underlying seven-year statute of repose for medical malpractice tort claims); *Tindol* v. *Boston Hous. Auth.,* 396 Mass. 515, 516, 519 (1986), citing *James Ferrera & Sons* v. *Samuels,* 21 Mass. App. Ct. 170, 173 (1985) (relation back rule of Mass. R. Civ. P. 15 [c], inapplicable where application "would have the effect of reactivating a cause of action that the Legislature

to contractors, subcontractors, laborers, and suppliers for the value of their services and goods provided for improving the owner's real estate.' " *National Lumber I, supra* at 668, quoting *Hammill-McCormick Assocs.* v. *New England Tel. & Tel. Co.,* 399 Mass. 541, 542-543 (1987). Here, relation back under rule 15 (c) clearly serves this purpose as it permits contractors, subcontractors, laborers, and suppliers to recover on a lien dissolution bond in an amended action to enforce a lien, without having to initiate an entirely new case to determine the same underlying amount due on the lien or to pay duplicative filing fees.

Permitting bond enforcement actions to relate back to the date of a timely-filed lien enforcement action does not frustrate the statutory objective of ensuring a reliable recording system. See *National Lumber I, supra* at 668, citing *Pratt & Forrest Co.* v. *Strand Realty Co.,* 233 Mass. 314, 317-318 (1919). Once a bond is recorded in accordance with § 14, the lien is dissolved on the record, and any concern about uncertainty of title arising from that lien is eliminated.[19] See *Golden, supra* at 660 n.8, citing *National Lumber I, supra* at 669-670, 671 (noting, by comparison, that *National Lumber I* court "determined that allowing relation back with respect to the addition of the new owner as a defendant in a mechanic's lien enforcement action would not impair the reliability of the recording system" because "the recording of the original enforcement complaint would, by itself, be adequate to alert the examiners to the present status of the mechanic's lien, and the later addition of a party would not impair an examiner's ability to confirm the presence or absence

---

obviously intended to eliminate" by statute of repose governing torts related to construction projects).

[19]The dissent, *post* at 870, 873, expresses concern that application of the ordinary rules of relation back in the context of § 14 would introduce uncertainty into the mechanic's lien statute. However, concerns about uncertainty appears to relate primarily to reliability of title. See *Golden, supra* at 660 & n.8 (discussing interest in certainty of recording system). As described above, once a bond is posted, the lien encumbering the property is dissolved, and any uncertainty of title arising from the lien disappears. Moreover, the principal on the bond — the party with a continuing interest in certainty — would be on record notice of any pending lien enforcement actions, back to which an amendment could relate, when undertaking to post a bond in the first place. See G. L. c. 254, § 5 (requiring recording of copy of complaint seeking enforcement of lien).

of that lien"). Additionally, any interest of the principal on the bond in ensuring prompt determination of its liability to the claimant is well served by Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), which requires that a claimant must obtain leave of court or consent of the adverse party to amend a complaint more than twenty days after the original complaint is served.[20]

We therefore conclude that the ordinary relation back provisions of rule 15 (c) apply to § 14 bond enforcement actions, and that a claimant may, in accordance with rule 15, amend a timely filed complaint seeking enforcement of a lien to add a claim to enforce a lien dissolution bond against the holder of the bond after the ninety-day period set forth in § 14.[21] For these reasons, Maine Drilling's motion to dismiss NES Rentals' action to enforce the bond against it was properly denied.[22]

*Judgment affirmed.*

LENK, J. (dissenting). I write separately because I believe that the court's decision strays from both clear statutory language and well-established precedent. In so doing, the court unnecessarily introduces a level of unpredictability into the requirements for compliance with the mechanic's lien statute, an area of law in which those affected rely on the certainty that the statute is designed to provide. See *Golden* v. *General Bldrs. Supply*, 441 Mass. 652, 659-600 (2004) (*Golden*).

---

[20]Although the rule provides that "leave shall be freely given when justice so requires," see Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974), undue delay in amending an existing complaint asserting a lien enforcement claim to add claims to enforce a lien dissolution bond would be a basis for a judge to deny a claimant's motion to amend. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289-290 (1977), quoting *Forman* v. *Davis*, 371 U.S. 178, 182 (1962).

[21]A claimant is of course not precluded from filing a separate, timely complaint to enforce a bond under § 14. See *National Lumber II, supra* at 725; *LaCentra* v. *Jackson*, 245 Mass. 14, 19-20 (1923).

[22]NES Rentals argues that Maine Drilling and Berkley did not properly give service of notice of the bond to NES. We do not address this argument, which was not raised below and therefore has been waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Because of the conclusion we reach, we also do not address NES Rentals's argument that a procedural conflict exists between rule 15 and Superior Court Rule 9A.

"Because a mechanic's lien is purely a creation of statute, we have consistently required exact compliance with the [mechanic's lien] statute in order to create, perfect, and enforce such a lien." *Id.* at 654. "Just as strict compliance with the [statutory] provisions is required to perfect the lien, . . . so may a person in interest dissolve the lien by strictly adhering to [G. L. c. 254, § 14, as amended through St. 2000, c. 400, § 2 (§ 14)]." *National Lumber Co.* v. *United Cas. & Sur. Ins. Co.*, 440 Mass. 723, 729 (2004), citing *National Lumber Co.* v. *Le Francois Constr. Corp.*, 430 Mass. 663, 666 (2000). In applying the relation back rule, Mass. R. Civ. P. 15 (c), 365 Mass. 761 (1974) (rule 15 [c]), to permit this claimant to file its amended complaint outside of the ninety-day period within which, under § 14, a claimant is to enforce a lien dissolution bond,[1] the court today overlooks this well-established rule of strict compliance and renders this statutory deadline largely superfluous.

As the court recognizes, an amendment to the complaint that the claimant originally brought to enforce the then undissolved lien may constitute the "civil action" contemplated in § 14; the parties agree that an entirely new case need not be brought by a claimant in order to enforce the lien dissolution bond. *Ante* at note 9. The issue, then, is not — as the court's statutory analysis, *ante* at 867-869, would suggest — *whether* an amended complaint will suffice, but *when* the amended complaint must be filed. In reliance upon the relation-back provisions of rule 15 (c), the court concludes that it need not be filed within the ninety-day period mandated by § 14. To the extent that the court justifies this result by suggesting that it permits claimants to recover on a lien dissolution bond "without having to initiate an entirely new case," *ante* at 869, it answers a question that has not really been asked.

The question that is before us is whether the claimant's amended complaint must be "commenced," i.e., filed with the court, see *Nett* v. *Bellucci*, 437 Mass. 630, 643-644 (2002), and Mass. R. Civ. P. 3, as amended, 385 Mass. 1215 (1982), within

---

[1] "The claimant may enforce the bond by a civil action commenced within ninety days after the later of the filing of the statement required by section 8 or receipt of notice of recording of the bond." G. L. c. 254, § 14, as amended through St. 2000, c. 400, § 2 (§ 14).

ninety days after the claimant receives notice of the bond.[2,3] In applying rule 15 (c) in these circumstances, the court permits an amended complaint, at whatever vague and uncertain point beyond the ninety-day deadline it may ultimately be filed with the court, to take on the date of the original complaint. The court does so because it discerns no incompatibility between the rule and the statute's express ninety-day requirement. I think otherwise, and conclude that the statute must supersede the rule. See *Hermanson* v. *Szafarowicz*, 457 Mass. 39, 45 (2010) ("Where there is such an irreconcilable conflict between a court rule and a statute, the statute supersedes the rule"); *Golden, supra* at 655 (procedural rules apply "[a]bsent some incompatibility" with statute).

The upshot of the court's decision is to render the ninety-day period set forth in the statute largely superfluous, a result that is ordinarily to be avoided. See *Trace Constr., Inc.* v. *Dana Barros Sports Complex, LLC*, 459 Mass. 346, 352 (2011), quoting *Bynes* v. *School Comm. of Boston*, 411 Mass. 264, 268 (1991) ("It is [an] elementary rule of statutory construction that a statute should not be read in such a way as to render its terms meaningless or superfluous"). The ninety-day deadline to enforce a lien dissolution bond will now apply only when a new civil action must be initiated by the claimant, e.g., when a bond is filed in the period after the filing of a lien and before the commence-

---

[2] I agree with the court that the mere service of a motion to amend a complaint on an opposing party does not constitute commencement of an action within the meaning of § 14. *Ante* at 864.

[3] If the amended complaint is not itself filed with the court within the ninety-day period, the filing with the court in that ninety-day window of the motion to amend the complaint should be deemed to commence the § 14 civil action. See *Nett* v. *Bellucci*, 437 Mass. 630, 643-644 (2002). Doing so relieves the claimant from dependence on the speed with which a court may address the motion to amend and leaves in the claimant's hands the obligation and ability timely to commence the § 14 civil action. While the claimant must of course factor into the ninety-day window the brief period of time within which an opposing party may serve any opposition papers pursuant to Rule 9A of the Rules of the Superior Court (2012), it remains the case that, by filing the amended complaint or the motion to amend, there is an ascertainable date that is within the statutory timeframe. This is quite unlike the indeterminate date, outside the statutory period, when an amended complaint may be filed in the wake of today's decision. Here, the claimant did not file either the motion to amend the complaint or the amended complaint itself until well after the ninety-day deadline had passed.

ment of an original civil action to enforce it, or when the dissolution bond is filed before the lien attaches. See G. L. c. 254, § 12, as amended through St. 2002, c. 400, § 1. As to everyone else,[4] the date by which such claimants must file an amended complaint is left essentially indeterminate, dependent as it is upon whether leave to amend, whenever sought, will ultimately be granted by a court.

It is hard to imagine that this is what the Legislature intended in a statute otherwise replete with precise statutory deadlines with which we have routinely required exact compliance. See *Gale* v. *Blaikie*, 129 Mass. 206, 209 (1880) ("The lien is not a common-law right, but a creature of the statute. It can be preserved and enforced only by a strict compliance with the requirements of the statute. There are no equities to be involved in aid of it."). Certainly, nothing in the language of § 14 itself suggests that the Legislature intended the ninety-day period to apply only to a limited class of claimants seeking to enforce a lien dissolution bond; it does not on its face exempt from the category of claimants, as the court does, those who previously filed civil actions to enforce a lien. Had the Legislature wished to do so, it could easily have said as much. See *Leary* v. *Contributory Retirement Appeal Bd.*, 421 Mass. 344, 348 (1995) ("where the statute is detailed and precise, we regard [an] omission as purposeful"). In the absence of such a provision, the procedural rule regarding relation back of an amended complaint cannot nullify the clear and contradictory statutory deadline. Cf. *Friedman* v. *Board of Registration in Med.*, 414 Mass. 663, 665 (1993) (where "there is a statutory appeal period" it "cannot be overridden by a contrary rule of court").

Strict compliance with the express language of the mechanic's lien statute promotes certainty, uniformity of application, and predictability for all whose interests are affected by it; the vagueness, imprecision and uncertainty introduced by the court's novel and relaxed approach does those interests no favors. Given

---

[4]Since the statute requires claimants seeking to enforce a mechanic's lien to commence a civil action within a narrow timeframe lest the lien be dissolved, G. L. c. 254, § 11, as amended through St. 1996, c. 364, § 11, most claimants later seeking to enforce a lien dissolution bond, G. L. c. 254, § 14, will already have brought a civil action and will likely seek to amend that original complaint.

this, I conclude that rule 15 (c) does not "peaceably coexist," *Golden, supra* at 658, with the express language of § 14 and the former must yield to the latter. I respectfully dissent.